# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-432V
### (Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                        *
MARIE CURRI,                            *
                                        *
            Petitioner,                 *       Filed:  October 31, 2018
                                        *
v.                                      *
                                        *
                                        *       Damages; Influenza ("flu") Vaccine;
SECRETARY OF HEALTH                     *       Shoulder Injury Related to Vaccine
AND HUMAN SERVICES,                     *       Administration ("SIRVA"); Current and
                                        *       Future Unreimbursed Expenses; Pain and
                                        *       Suffering.
                                        *
            Respondent.                 *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Glenn Alexander MacLeod*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On March 27, 2017, Marie Curri filed a petition seeking compensation under the National Vaccine Injury Compensation Program.[2] Pet. at 1, ECF No. 1. Ms. Curri alleged that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of receiving the influenza ("flu") vaccination on September 22, 2015. *Id.* After Respondent indicated in his Rule

---

[1] Although this Decision has not been designated for publication, it will be posted on the United States Court of Federal Claims website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Decision will be available to anyone with Internet access.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10–34 (2012) (hereinafter "Vaccine Act" or "the Act"). Individual section references hereafter shall refer to §300aa of the Act.

4(c) Report that the Petitioner's claim was compensable as a Table injury under the Act. I issued a decision on entitlement in Petitioner's favor. Decision, dated Nov. 13, 2017, ECF No. 17.

Thereafter, the parties attempted to determine the proper damages to be awarded to Ms. Curri for her injuries, but were largely unable to reach agreement on specific award components. The parties filed briefs laying out their positions on the disputed award elements. *See* Pet'r's Mem., dated May 18, 2018, ECF No. 28 ("Mot."); Resp't's Br. on Damages, dated July 2, 2018, ECF No. 32 ("Opp."); Pet'r's Reply, dated July 16, 2018, ECF No. 33 ("Reply"). In total, Petitioner requests a damages award of $219,894.71 (Mot. at 23), but based on my review of the file and the parties' submissions, I find that Petitioner is entitled only to a damages award of **$134,264.08**. The basis for this determination is set forth below.

## I.      *Procedural and Factual History*

As noted above, the case was initiated in March 2017. Petitioner, at the time a 33-year-old ultrasound technician, received an employer-mandated flu vaccination in her left shoulder on September 22, 2015. Ex. 1 at 1; Ex. 19 at 3. Not long after, Ms. Curri began to experience numbness, pain, and tingling in the left upper arm, pain in her left jaw, a headache, and nausea. Ex. 15 at 17. On October 1, 2015, she visited Employee Health at Albany Medical Center (her workplace) with complaints of soreness in her left upper arm and shoulder and decreased range of motion in her left shoulder. *Id.* Thereafter, Petitioner saw an orthopedist, Dr. Richard Alfred, for her ongoing pain, soreness, and limited range of motion in her left arm and shoulder on October 9, 2015. Ex. 2 at 108. Her pain did not subside after several months, so Ms. Curri underwent a magnetic resonance imaging ("MRI") on December 18, 2015, which revealed "multiple pinhole full-thickness tears" in a left rotator cuff tendon. *Id.* at 28.  Petitioner subsequently saw a second orthopedist, Dr. Andrew Gerdeman, on January 5, 2016. *Id.* at 113–14. Dr. Gerdeman diagnosed Ms. Curri with a left rotator cuff tear, for which she received a left shoulder arthroscopy with rotator cuff repair and subacromial decompression on March 15, 2016. *Id.* at 113; Ex. 9 at 1–11.

The evidence that Petitioner's shoulder problems were attributable to a mechanical injury caused by vaccination was sufficiently strong to compel Respondent to concede entitlement by November 13, 2017. Resp. Rule 4(c) Report at 5, ECF No. 16.

Based on the records filed in this case, it appears that although Ms. Curri's initial injury has resolved, she continues to suffer from related sequelae. In 2017, Dr. Gerdeman determined that Petitioner's left shoulder had reached its "maximum medical improvement," leaving her with a permanent "scheduled loss of use" of 22.5 percent of her left arm. Ex. 21 at 2. Ms. Curri gave birth to twins in late 2017, and a difficult delivery followed by frequent use of her arms to lift and transport her two infants (as well as her three-year-old daughter) collectively exacerbated her left shoulder pain. Ex. 22 at 1; Ex. 27 at 1–3. She continues to experience pain and movement difficulty in her left shoulder, although some degree of this discomfort may be attributable to a minor

intervening accident in her home. Ex. 25 at 1. She received a cortisone injection for her ongoing shoulder pain on May 17, 2018. *Id.*

## II.   *Disputed Damages Components*

The parties successfully agreed to eliminate a few categories of damages altogether. Thus, both sides agree that Petitioner does not have a cognizable claim for lost actual wages or future wages. *See* Mot. at 19; Opp. at 11. They disagree regarding the appropriate award sum in all other categories of damages. *See* Mot. at 15–23; Opp. at 7–11.

First, the parties dispute the amount of past unreimbursed vaccine injury-related expenses. Petitioner requests **$5,056.21** for assorted past expenses, including travel to and from medical visits, medical equipment, housekeeping services, and lawn care services (the latter two of which were incurred due to Ms. Curri's arm pain and movement limitations). Mot. at 15–16. Respondent counters that Petitioner is entitled to only **$167.59** in this category. Opp. at 7. Noting that most ($4,775.00) of this requested amount went towards housekeeping and yardwork, Respondent argues that these specific services were not "reasonably necessary" as required for compensation under Section 15(a)(1)(A)(iii)(II) of the Vaccine Act. *Id.* at 8. Of the remaining $281.21 requested in this category, Respondent accepts the appropriateness of reimbursing Ms. Curri's travel to and from medical visits,[3] as well as payment for a shoulder sling ($30.99), a body brush ($9.99), and a hot/cold gel pack ($8.88), but disputes the appropriateness of reimbursing her for aspirin ($6.35) and a low side crib ($107.19). Opp. Attachment at 2–3, ECF No. 32-1. Respondent provides no explanation for his objection to compensation for aspirin or the low side crib.

Second, the parties disagree as to the sum of future unreimbursed vaccine-related expenses that Petitioner should receive (and the magnitude of that disagreement is much larger). *See* Mot. at 17–18; Opp. at 8–11. Petitioner requests **$64,838.50** for a range of future expenses, including medical care ($200.00 per year), housekeeping ($1,950.00 per year), yardwork ($1,000.00 per year), and grocery delivery services ($260.00 per year), all for present through 2046 (when Ms. Curri will reach the age of sixty-five). Mot. at 17–18. Respondent argues that no award should be made for future unreimbursable expenses, advocating for **$0.00** in this category. Opp. at 8. In support of his position, Respondent reiterates his prior argument that reimbursement for expenses such as housekeeping, grocery delivery, and yardwork is not "reasonably necessary" in this case. *Id.* at 9–11. Furthermore, Respondent contends that Petitioner has not sufficiently substantiated her request for future expenses related to medical care. *Id.* at 8–9.

Finally, the parties have not reached an accord on the proper pain and suffering award, although both agree that *some* non-negligible amount is appropriate. *See* Mot. at 19–23; Opp. at 11–15. Petitioner requests an award of **$150,000.00**, maintaining that she has already suffered

---

[3] Petitioner requests travel reimbursement in the amount of $117.81. Ex. 24 at 5. Respondent, however, recommends reimbursement of the slightly lesser sum of $117.73. Opp. Attachment at 2. Respondent does not explain his reasoning behind the proposed reduction of $0.08, and therefore has not substantiated grounds for such a reduction.

severe hardship—including day-to-day difficulties as a parent of three young children, an altered career trajectory, and extensive physical pain—and that her 22.5 percent loss of use of her left shoulder will cause her great future pain and suffering. Mot. at 20–23. Respondent accedes to the general propriety of this requested damages component, but is only amenable to the somewhat reduced sum of **$105,000.00**. Opp. at 15. In support, Respondent observes that the $250,000.00 ceiling that the Vaccine Act imposes on the pain and suffering damages component should not be viewed as a default sum to be awarded in any given case, but instead should only come into play if a showing has been made that the petitioner's pain and suffering *exceeds* that figure. *Id.* at 13–14. Otherwise, he argues, a petitioner should only receive an amount proven commensurate with his or her actual pain and suffering, and in keeping with the magnitude of other Vaccine Program Awards. *Id.* at 14. In this case, Respondent proposes $105,000.00 as the proper amount (without substantiating the basis for this specific figure). *Id.* at 15.

## ANALYSIS

### I.    *Past Unreimbursed Expenses*

A Vaccine Program claimant may recover past unreimbursed vaccine-related expenses which are found to be "reasonably necessary." Section 15(a)(1)(B). This category may include, *inter alia*, costs related to medical care, therapy, special equipment, and travel. *Id.* Petitioners bear the burden of showing that their requested costs are reasonably necessary. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *13 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). It cannot be disputed that the same damages award is not appropriate in every case, but rather that each damages award should be tailored specifically to the demonstrated needs of the injured party, while adhering to the limits set by the Vaccine Act. *See, e.g.*, *Barone v. Sec'y of Health & Human Servs.*, No. 11-0707V, 2016 WL 3577540, at *6 (Fed. Cl. Spec. Mstr. May 12, 2016) (finding that a certain degree of supplemental home care was appropriate in light of the petitioner's specific circumstances).

The most significant element of requested past unreimbursed expenses disputed by Respondent is Ms. Curri's request for housekeeping and lawn care service expenses. This kind of cost has mainly been awarded where a claimant was so severely injured that such service-related expenses were subsumed within an award that took into account care issues not relevant to this matter, such as the need for specialized wheelchairs or structural changes to a home to accommodate a handicapped individual. *See, e.g.*, *Caruno v. Sec'y of Health & Human Servs*., No. 07-260V, 2011 WL 2909320, at *3 (Fed. Cl. Spec. Mstr. June 17, 2011); *Doe/55 v. Sec'y of Health & Human Servs*., No. [Redacted], 2010 WL 335367, at *3 (Fed. Cl. Spec. Mstr. Jan. 19, 2010).

To support her argument for housekeeping and lawn care expenses, Petitioner cites a single case, *Courbois v. Secretary of Health & Human Services*, No. 13-939V, 2016 WL 6047100 (Fed. Cl. Spec. Mstr. Apr. 20, 2016). However, although these kinds of expenses were in fact a component of the damages award in that case (which involved an injury similar to what Petitioner experienced), the *Courbois* decision provides no reasoned explanation for *why* they were appropriately awarded. Its explanatory value is thus greatly limited. Beyond *Courbois*, Petitioner has offered no purportedly relevant decisions involving petitioners who, like her, experienced a SIRVA and received this kind of damages component.

Based on this record and the nature of Petitioner's showing, I find that reimbursement of costs for housekeeping and lawn work in this case is not appropriate. While literally it may be true that these costs stemmed from Petitioner's injury, they do not *also* constitute an envisioned category of "actual unreimbursable expenses" under Section 15(a)(1)(B) of the Vaccine Act. Arguably, they could be shoehorned into "residential and custodial care and service expenses" (which may be compensated under Section 15(a)(1)(B)(iii)), but that phrase is best understood to focus on *care* needed by individuals so harmed by a vaccine injury that they can no longer properly care for themselves—not someone in the position of Ms. Curri, whose injury still leaves her with a reasonable capacity to carry out these kinds of home care-related duties.

I also note that Petitioner has not established that she has no other means of assistance in housekeeping or yard work matters. In prior cases, requests for reimbursement of family members' expenses incurred to provide care to the injured party have been denied on the grounds that their lost time in performing ordinary care tasks are not a covered Vaccine Act expense. *See, e.g.*, *Edgar ex rel. Edgar v. Sec'y of Health & Human Servs.*, No. 90-711V, 26 Cl. Ct. 286, 296 (1992), *vacated and remanded on other grounds*, 989 F.2d 473 (Fed. Cir. 1993). Since such otherwise legitimately-incurred costs are not deemed reimbursable, I cannot conclude that Petitioner *herself* (who has not otherwise established that she has no family member assistance for such tasks) should similarly be awarded the costs of hiring out help.

I otherwise find that the rest of Petitioner's requested costs in this category are reasonable. Accordingly, I award **$281.21** in past unreimbursed expenses.

## II.    *Future Unreimbursed Expenses*

As noted above, Petitioner requests future unreimbursed expenses of four varieties: medical expenses; housekeeping; lawn care; and grocery delivery. Mot. at 17–18. Future unreimbursed expenses may be paid when they are "reasonably necessary." Section 15(a)(1)(A)(iii)(II). As noted by another special master, future unreimbursed expenses should be awarded to a degree "beyond that which is required to meet the basic needs of the injured person [. . .] but short of that which may be required to optimize the injured person's quality of life. What is reasonably necessary lies somewhere between that which is 'indispensable' and that which is

'advantageous.'" *Scheinfield v. Sec'y of Health & Human Servs.*, No. 90-212V, 1991 WL 94360, at *2 (Cl. Ct. Spec. Mstr. May 20, 1991).

As discussed with regard to past expenses, I find that reimbursement for basic household-related services is not an appropriate damages component for a SIRVA-injured party who still possesses some use of her arm. While I recognize that Ms. Curri continues to suffer severe pain and a limited range of motion in her left shoulder, I do not find that she has established that she is completely incapable of housekeeping, yard work, or carrying groceries. The pain she may experience in association with such endeavors is best addressed in the pain and suffering portion of her award. Accordingly, I do not find housekeeping, yard work, or grocery delivery to be reasonably necessary future expenses.

This leaves only possible compensation for future medical expenses. Respondent contends that Ms. Curri has provided no substantiation for the possibility of reasonably necessary physical therapy, orthopedic visits, or dermatological services in the future. *See* Opp. at 8–9. However, as highlighted in Petitioner's request for these costs, Dr. Gerdeman has opined that her shoulder "is hypersensitive and may require some treatments in the future," and that "[s]he will also have to talk to either a dermatologist or a plastic surgeon regarding the keloid [scarring]." Ex. 22 at 1. Because Petitioner has provided medical substantiation for her need for this damages category, and because Respondent has not persuasively rebutted it, it should appropriately be awarded. *See Brewer*, 1996 WL 147722, at *13. I find that the requested award of $200.00 per year until 2046 (twenty-eight years) for future medical expenses is therefore reasonably necessary.

Before net present value reduction, this amount comes out to $5,600.00. In keeping with Vaccine Program practice, however, I will reduce this figure to its net present value. *See* Section 15(f)(4)(A) (requiring that future compensation awards be reduced to their net present value). The Supreme Court in *Jones & Laughlin Steel Corp.* noted that the "net discount method" should ordinarily be used in choosing a proper discount rate. *Childers v. Sec'y of Health & Human Servs.*, No. 96-194V, 1999 WL 218893, at *19 (Fed. Cl. Spec. Mstr. Mar. 26, 1999) (citing *Jones*, 462 U.S. 523, 538–50 (1983)). That same net discount method has been commonly utilized in other special master's decisions. *See, e.g.*, *Brown v. Sec'y of Health & Human Servs.*, No. 00-0182V, 2005 WL 2659073, at *9–10 (Fed. Cl. Sept. 21, 2005). Net discount rates utilized by other special masters have ranged from one percent to three percent, a somewhat higher range band than that utilized by non-Program cases. *See, e.g.*, *Neiman v. Sec'y of Health & Human Servs.*, No. 15-631V, 2016 WL 7741742, at *1 (Fed. Cl. Spec. Mstr. Oct. 31, 2016) (utilizing a net discount rate of one percent for the first fifteen years of an award); *J.T. v. Sec'y of Health & Human Servs.*, No. 12-618V, 2015 WL 5954352, at *13 (Fed. Cl. Spec. Mstr. Sept. 17, 2015) (adopting the respondent's suggested net discount rate of 1.5 to 1.6 percent); *Childers*, 1999 WL 218893, at *25 (employing a two percent net discount rate).

Petitioner proposes a discount rate of two percent, and Respondent has not proposed an alternative. Mot. at 18; Opp. at 9 n.4. However, recent decisions have adopted a multi-pronged approach in order to account for the unusually low treasury interest rates of present day. *See, e.g.*, *Neiman*, 2016 WL 7741742, at *1 (utilizing a one percent rate for the first fifteen years of an award, followed by a two percent rate for all remaining years). I find such reasoning persuasive, and will therefore utilize a one percent net discount rate for the first fifteen years of this award, followed by a two percent net discount rate for the remaining thirteen years. Applying this multi-pronged net discount rate, Petitioner's $5,500.00 award for future unreimbursed expenses will be **$3,728.76**.[4]

### III.   *Pain and Suffering*

While Respondent's assertion that awarding the statutory limit ($250,000.00) for pain and suffering in every case would be excessive is accurate (*see Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579, 587–93 (2013)), that ultimately has little bearing on my determination of Ms. Curri's pain and suffering award. The $150,000.00 Petitioner requests in this damages category falls below the statutory cap by some degree.

Although he clearly articulates why a default award of $250,000.00 would be unjust, Respondent has not otherwise made a compelling argument as to why the *requested* sum is exorbitant. Instead, Respondent simply explains that his evaluation (informed by experience resolving SIRVA claims both informally and through adjudication) of the degree and duration of Petitioner's injury, as well as the extent of any disability she suffers as a result, led him to conclude that $105,000.00 is an appropriate pain and suffering award for Ms. Curri.

Respondent may not have adequately defended the lower sum requested, but Petitioner has likewise not substantiated her basis for the $150,000.00 figure. While Petitioner looks to several other SIRVA damages awards in support for her request for $150,000.00, I do not find her reliance on these cases particularly persuasive. With the exception of *Courbois*, all are based on proffers from Respondent rather than reasoned decisions by a special master. *See Dominianna v. Sec'y of Health & Human Servs.*, No. 16-606V, 2017 WL 4872713, at *1 (Fed. Cl. Spec. Mstr. Mar. 27, 2017); *Melancon v. Sec'y of Health & Human Servs.*, No. 16-743V (Fed. Cl. Spec. Mstr. Mar. 17, 2017); *Stacy v. Sec'y of Health & Human Servs.*, No. 16-190V, 2016 WL 5819228, at *1 (Fed. Cl. Spec. Mstr. July 22, 2016); *Abdulla v. Sec'y of Health & Human Servs.*, No. 13-853V, 2015 WL 1186171, at *1 (Fed. Cl. Spec. Mstr. Feb. 13, 2015); *Deak v. Sec'y of Health & Human Servs.*, No. 14-668V, 2015 WL 765487, at *1 (Fed. Cl. Spec. Mstr. Jan. 12, 2015); *Cartwright v. Sec'y of Health & Human Servs.*, No. 14-474V, 2014 WL 7474547, at *1 (Fed. Cl. Spec. Mstr. Dec. 15, 2014). *Courbois*, the sole decision not based on a proffer, provides no explanation for why a pain

---

[4] This figure was calculated using the online present value calculator available at https://financial-calculators.com/present-value-calculator (compounding annually).

and suffering award of $142,94.40 was warranted. *See Courbois*, 2016 WL 2765092, at \*1 (not discussing rationale for any category of damages).

Many Vaccine Program cases discuss two subcategories of pain and suffering awards: past and projected. *See, e.g.*, *Collado v. Secretary of Health & Human Services*, No. 17-0225V, 2018 WL 3433352, at \*6–8 (Fed. Cl. Spec. Mstr. June 6, 2018) (discussed briefly in Reply at 10). Here, neither party discussed these subdivisions in detail, although Petitioner did explicitly request an award for "past and future pain and suffering." Mot. at 23. In *Collado*, the parties similarly did not bifurcate their discussion of past and projected pain and suffering. *Collado*, 2018 WL 3433352, at \*8. There, the special master noted that, while the petitioner described ongoing symptoms in her affidavits that might implicitly support an award for future pain and suffering, she failed to substantiate such support with corroborating medical records. *Id.* Accordingly, no award was made for future pain and suffering. *Id.*

In prior discussions of appropriate pain and suffering awards, judges and special masters have considered three primary factors when determining an appropriate pain and suffering award: severity of the injury, awareness of the injury, and duration of the suffering. *See, e.g.*, *Collado*, 2018 WL 3433352, at \*6. To inform my analysis of these factors in Ms. Curri's case, I have considered two recent Vaccine Program cases *not* based on proffers, and in which a SIRVA claimant received surgery for his or her injury: *Collado* and *Dobbins v. Secretary of Health & Human Services*, No. 16-0854, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018).[5] In these two cases, the petitioners both suffered SIRVAs requiring arthroscopic rotator cuff repair, for which they received $120,000.00 and $125,000.00 for pain and suffering, respectively. *Collado*, 2018 WL 3433352, at \*6–8; *Dobbins*, 2018 WL 4611267, at \*12.

Neither *Dobbins* nor *Collado* included an award for future pain and suffering, however. In fact, only one reasoned SIRVA damages decision awarded compensation for future pain and suffering: *Dhanoa v. Secretary of Health & Human Services*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018). In *Dhanoa*, the special master awarded $10,000.00 for pain and suffering for the year immediately following the decision, but gave no award for subsequent years. *Id.* at \*7. Lifetime pain and suffering awards in other contexts, by contrast, tend to avoid large lump sums in favor of more conservative annual awards. For example, in two cases involving unusually severe intussusceptions leading to expected lifetimes of abnormal bowel functions, the special master awarded $1,000.00 per year for the claimants' expected future hardship. *Neiman v. Sec'y of Health & Human Servs.*, No. 15-631V, 2016 WL 6459618, at \*7 (Fed. Cl. Spec. Mstr. Aug. 22, 2016); *Brooks v. Sec'y of Health & Human Servs.*, No. 14-563V, 2016 WL 2656110, at \*4 (Fed. Cl. Spec. Mstr. Feb. 26, 2016).

---

[5] When determining pain and suffering awards, Special Masters may reasonably take into account prior decisions on the same issue. *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854, 2018 WL 4611267, at \*10 (Fed. Cl. Spec. Mstr. Aug. 15, 2018); *Jane Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009).

Here, I find that an award somewhat closer to what Petitioner requested is appropriate in light of Petitioner's significant arm and shoulder pain, her permanently reduced range of motion, and the unique challenges her shoulder injury creates in her day-to-day life as a working mother of three young children. Medical records from recent visits with Dr. Gerdeman also confirm that Ms. Curri continues to experience ongoing sequelae of her injury. *See, e.g.*, Ex. 22 at 1 (Dr. Gerdeman noting "significant pain at the surgical site and posterolaterally in the shoulder [. . .] hypersensitive to light touch [. . .] pain with any resisted external rotation" on May 1, 2018). This indicates that Ms. Curri will likely experience ongoing pain and suffering for many years, perhaps for the rest of her life. However, while her discomfort is unquestionably severe and debilitating, it will likely be less extreme than that suffered by other Vaccine Program claimants living with far more debilitating and catastrophic injuries. I therefore find a rate of **$550.00** per year to be appropriate for future pain and suffering.

Accordingly, I conclude that a past pain and suffering award of **$120,000.00**, plus a future pain and suffering award of **$15,400.00**, is appropriate in this matter.

Like the award for future unreimbursed expenses, the projected pain and suffering award should be reduced to its net present value. Employing the same multi-pronged discount rate of one percent for the first fifteen years followed by two percent for the final thirteen years, the future pain and suffering award comes out to **$10,254.11**. Therefore, Petitioner's combined pain and suffering award will be **$130,254.11**.

## CONCLUSION

In light of the above, I calculate damages as follows:

| Damages category | Requested | Awarded | Difference |
|---|---|---|---|
| Unreimbursed past vaccine-related expenses | $5,056.21 | $281.21 | $4,775.00 |
| Unreimbursed future vaccine-related expenses | $64,838.50 | $3,728.76 | $61,109.74 |
| Pain and Suffering | $150,000.00 | $130,254.11 | $19,745.89 |
| Total | $219,894.71 | **$134,264.08** | $85,630.63 |

In conclusion, I approve a Vaccine award in the following amount:

- **A lump sum of $134,264.08, which represents compensation for past unreimbursed expenses ($281.21), future unreimbursed expenses ($3,728.76), actual pain and**

**suffering ($120,000.00), and future pain and suffering ($10,254.11), in the form of a check payable to Petitioner.**

This amount represents compensation for all items of damages that would be available under Section 15(a).

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk **SHALL ENTER JUDGMENT** in accordance with this decision.[6]

      **IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.